IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MICHAEL ALLEN BAKER § <br> TDCJ-CID No. 1654093 § <br>    Plaintiff pro se, § <br> § <br> vs. § <br> § <br> § <br> TDCJ-CID, et al., Defendants, § <br> DESSIE L. Ware, § <br>    Defendants. § <br> § | CIVIL ACTION NO. _____ <br><br> JUDGE, _____ |

JURY TRIAL DEMANDED
COMPLAINT FOR MONEY DAMAGES AND INJUNCTION

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED
MAR 16 2015
David J. Bradley, Clerk of Court

### INTRODUCTION

1.  This is a civil rights action filed by MICHAEL ALLEN BAKER, a state prisoner incarcerated in the Texas Department of Criminal Justice - Correctional Institutional Division (TDCJ-CID). Plaintiff is seeking compensatory damages, declaratory and injunctive relief for violations of both the American with Disabilities Act (ADA), 42 U.S.C.§12101 et seq., and under Section 504 of the Rehabilition Act (RA), 29 U.S.C.§ 794; alleging intentional discrimination based on disability and for failing to provide a requested reasonable accommodation in consideration of Plaintiff's eating disability, i.e., gastric bypass.

### JURISDICTION / VENUE

2.  The Court has jurisdiction over the plaintiff's claims of violations of both the ADA/RA statutes under 28 U.S.C. §§ 1331 and 1334 (a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.

3.  The U.S. Southern District of Texas is an appropriate venue under 1391 (b)(1) because "A civil action may be brought in a judicial district on which any defendant resides"... The defendant TDCJ-CID, a State entity, primary offices are located in Walker County, Huntsville, Texas, within the jurisdiction of the Court.

## PARTIES

4.  Plaintiff MICHAEL ALLEN BAKER, is and was at all times mentioned herein a prisoner of the State of Texas in the custody of the Texas Department of Criminal Justice (TDCJ). He is currently confined at the Price Daniel Unit, 938 South FM 1673, Snyder, Texas 79549

5.  Defendant TDCJ-CID is a State of Texas public entity responsible for the day-to-day operation and management of the TDCJ. For claims brought under both the American with Disabilities Act (ADA) and the Rehabilition Act (RA) statutes, the doctrine of respondeat superior applies, making TDCJ responsible for the vicarious actions or inactions of its employees, and is sued under that doctrine. TDCJ-CID, P.O.Box 99, Huntsville, Texas 77342-0099

6.  Defendant Dessie L. Ware, sued in her official capacity, is an employee of the TDCJ and holds the rank of Major at the Price Daniel Unit. Upon informantion and belief and acting through TDCJ, Major Ware is head of unit security and as such is responsible for the day-to-day operations for the unit including the implemantation and enforcement of established TDCJ policies. Price Daniel Unit, 938 South FM 1673, Snyder, Texas 79549

## EXHAUSTION OF LEGAL REMEDIES

7.  The Plaintiff has exhausted his administrative remedies with respect to all claims and all defendants, (see attached Exhibits 1-4).

## SOVEREIGN IMMUNITY

8.  TDCJ-CID is a State of Texas public entity. Public entities that receive Federal funds expressly waive Eleventh Amendment immunity to claims asserted directly under the American with Disabilities Act (ADA) and the Rehabilitation Act (RA)., 42 U.S.C.S. § 2000d-7(a)(1).
    Upon information and belief, TDCJ-CID receives Federal funding and has thus waive immunity for claims under §504 of the Rehabilitation Act.

## PLAINTIFF'S GASTRIC BYPASS

9. Gastric bypass is a last resort, radical and permanent surgical procedure which alters a persons intestinal track by cutting the stomach into two separate sections of which only one is viable. The entry into and out of that four ounce viable stomach is then reduced to the size of a pencil - the purpose of which is to prevent food from quickly entering or exiting the stomach. In addition, three feet of intestine have also been removed. This surgery, by design, is to limit the amount of and the speed and frenquency of food that its recipient can consume with the obvious goal of promoting weight loss.

10. As expected, there are profound and permanent physical and dietary challenges with this type of surgery that its recipent is forced to accept: one of which is the eating process is slower. Food must be chewed to a consistency that allows it to pass through into the stomach. Resstrained by the surgically imposed limitations, it is physically impssible to eat or drink quickly without risk of suffering consequences such as severe pain, spontaneous regurgitation, and "Dumping syndrome." Dumping syndrome is a significant and common post-surgery illness that a recipient of this surgery is susceptible to.

11. "Dumping syndrome occurs after a gastrecotomy and is an intolerance to the bulk of food which results in vomiting and distress from eating too much too fast... a condition characterized by weakness, dizziness, flushing and warmth, nausa and palpitation immediately or shortly after eating and is produced by the abnormally rapid empting of the stomach."

12. Dietary choices can also trigger dumping syndrome. A recipient must refrain from consuming refined sugars, certain fats and diary products, as well as, white bread, white rice, and white pasta, (those foods continue to expand after consumption stretching the stomach.)

13. Although there are additional physiological and psychological challenges associated with this surgery, outside a prison environment this disability can be somewhat mitagated through diet and patience, but what makes my gastric bypass distinguishable from others is my incarceration. As a prisoner I have no control over what I eat, when I can eat, the length of time given to eat or the ability to follow my doctors orders. I am dependent upon TDCJ for my needs.

## STATEMENT OF FACTS

14. On or about 2007-2008, plaintiff had gastric bypass surgery due to morbid obesity and his failure with diets and exercise.

15. On or about June, 29, 2010, plaintiff was convicted of his crime and subsequently sentenced to 15 years in TDCJ.

16. On or about August 2, 2010, plaintiff was delivered to the custody of the TDCJ Holliday Unit to begin his sentence.

17. Plaintiff incorporates attached Exhibits 1 through 7 as though they were stated fully herein.

18. For the sake of brevity, this case is fairly straight-forward. Plaintiff's disability significantly restricts his ability to eat normally, (refer to paragraphs 9-13 of this complaint.) The speed that TDCJ demands that prisoners eat is physically impossible for the plaintiff to comply with.

19. Although TDCJ was given notice of plaintiff's disability upon his arrival, and thought it significant enough to document, in the proceeding five years of incarceration plaintiff's repeated request for a reasonable accommodation has been denied. (see attached Exhibit No.3 Step 2 response.)

20. The reasonable accommodation that plaintiff has sought has been the issuance of a slow eating pass, a medical provision that is commonly available throughout TDCJ for prisoners with eating difficulties.

21. This slow eating pass would provide an ideal solution as it would meet the plaintiff's immediate needs and would not impose an undue hardship nor require any additional efforts from either the kitchen or security staff or for the dining room to extend its hours of operations. Although the benefits of such considerations have been denied to me, they are routinely extended to others, such as with the "Insulin" and the "Lab do not eat" patients by extending their breakfast two additional hours daily, AND but also to the Muslims during the month of Ramadan, who eat dinner after sunset.

(4)

22. Until recently the medical provider has been unyielding in their denial for plaintiff's request for this pass, and has consistently stated the reason why as, "Security does not want slow eating passes at this unit", (see attached Exhabit No.5.) Medical has attributed Defendant Ware as the source of this order.

23. Plaintiff has exhausted the administrative processes concerning this issue, (see attached Exhibits No.'s 2-4.)

24. On or about July 31, 2014, plaintiff sent a certified letter to the TDCJ-CID Director Rick Thaler, alleging intentional disability discrimination, (see attached Exhabit No.7.)

25. Director Thaler's response was "His office does not respond to offender complaints or request", (see attached Exhibit No. 7.)

26. On or about August 14, 2014, plaintiff's complaints to the medical provider of the increasing frenquency of post-operative illnesses, i.e., dumping syndrome and spontanious regurgitation that plaintiff is experiencing was of such concern that plaintiff was prescribed a "Slow eating pass" - $4\frac{1}{2}$ years from his initial request.

27. With plaintiffff's first attempt to use the pass it became immediately apparent that the pass was worthless, as previously indicated by the medical provider that it would be. To date, there has not been a single occasion when plaintiff has requested and presented the pass to staff members that he has been permitted additional time to eat. Often when plaintiff presents the pass he is subjected to hostility and verbal abuse. The pass has actually been temporarily conficated on two occasions. Security staff states "Slow eating passes" are not valid , per Major Ware's orders. A legitmate accommodation continues to remain unavailable.

28. On or about August, 19, 2014, plaintiff informed Defendant Ware that his recently medically issued slow eating pass was not being recognized by security staff. Defendant Ware's response was "That's good, I've instructed my people not to", "We don't have slow eating passes here, and I've told medical to stop issuing them","You get 20 minutes to eat and with what their serving 20 minutes is enough." (see Exhibit No.1.)

29. On or about August 25, 2014, plaintiff filed his 4th grievance with Defendant Ware being the primary subject, (see attached Exhabit No.1.)

30. On or about September 2, 2014, as a result of plaintiff's 4th grievance, Defendant Ware, the Chief of Classification, C.Williams and Building Captain, R. Hurt, as witnesses, met with plaintiff. The purpose of this conference supposedly was to determine exactly how much time the plaintiff required to eat.

31. Plaintiff explained in detail his need to have 20 minutes of actual eating time, not just 20 minutes of access to the dining room, (see attached Exhabit No.2.) Defendant Ware accused the plaintiff of attempting to manipulate the system.

32. Defendant Ware's decision was after speaking to medical, plaintiff was only entitled to the 20 minutes in the dining room allowed by TDCJ policy.

33. On or about November 13, 2014, plaintiff's "Slow eating pass" was renewed by the medical provider.

34. Upon information and belief, Defendant Ware acting through TDCJ, circumvented established TDCJ medical policy by promulgating her own unwritten policy, pratice or custom that has excluded plaintiff from "Meaningful access" to the prison food service by not allowing plaintiff sufficient time to eat, and by subsituting her own judgment for that of a medical professional.

35. Upon information and belief, Defendant Ware has "Directly interfered with medical treatment once prescribed" and has exceeded her authority as Price Daniel Unit Major.

36. Upon information and belief, there is not a legitimate penological interest in denying "Slow eating passes" at the Price Daniel Unit.

**DAMAGES**

37. Plaintiff's quality of life has been dramatically altered. The effect of being forced to eat bulk food quickly during plaintiff's incarceration has negated any positive benefits that the plaintiff has experienced from his gastric bypass surgery. Plaintiff now lives with chronic pain that becomes severe during meals, and suffers from frequent bouts of dumping syndrome and spontaneous regurgitation. In addition, plaintiff has experienced a tearing sensation that, upon information and belief, internal damage has been inflicted.

**LEGAL CLAIMS**

38. Plaintiff incorporates paragraphs 1 through 36 as though they were fully stated herein.

39. The action or inactions of the defendants violated plaintiff's rights under the Eight Amendment, both the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA), when the defendants failed to provide a requested reasonable accommodation, intentionally discriminated against plaintiff, excluded plaintiff from fully participating in the prisons meal program and directly interfered with plaintiff's prescribed medical treatment, all based on reason of plaintiff's disability.

## PRAYER FOR RELIEF

40. WHEREFORE, plaintiff respectfully pray that this Court enter judgment
   A. Granting plaintiff Baker a declaration that the acts described herein violated his rights under the Eight Amendment, ADA and RA statutes and
   B. A preliminary and permanent injunction ordering that defendant TDCJ honor the medically issued slow eating pass prescribed to plaintiff.
   C. Issue an injunction ordering TDCJ to immediately arrange for plaintiff to be examined by a qualified physician.
   D. Order defendants to pay compensatory damages for physical and emotional injuries.
   E. Plaintiff also seeks recovery of his costs in this suit.
   F. Grant other just and equitable relief that this Honorable Court deems necessary.

Dated: March __11__, 2015
   Respectfully submitted,

_/s/ M. Baker_

Michael Allen Baker
TDCJ-CID No. 1654093
Price Daniel Unit
938 South FM 1673
Snyder, Texas 79549

## VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare and verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Excuted on March __11__, 2015

_/s/ M. Baker_
Michael Allen Baker

(8)